UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TRAVIS SEICH, as Personal Representative
of the Estate of N.S., infant, decedent,

    Plaintiff,

v.                                      Case No. 3:22cv668-TKW-HTC

THE BOPPY COMPANY, LLC,
a Colorado Limited Liability Company,

    Defendant.
_____/

ORDER

Plaintiff Travis Seich, the Personal Representative of N.S.'s Estate, brings this product liability suit against Defendant, The Boppy Company, LLC ("Boppy"), after infant N.S. was found deceased on a Boppy Newborn Lounger ("Newborn Lounger"). Plaintiff sues Boppy for defective design, failure to warn, and negligence. Currently before the Court is Plaintiff's motion to compel, ECF Doc. 62,[1] which seeks to compel Boppy to put up the same or another witness for a 30(b)(6) deposition and to compel Boppy to produce additional documents. The discovery dispute, thus, poses two questions for the Court: (1) whether Boppy's

---

[1] Plaintiff initially filed a redacted motion to compel, ECF Doc. 60, along with a motion to seal, ECF Doc. 59, on October 6, 2023. After the motion to seal was granted, on October 11, 2023, Plaintiff filed an unredacted motion to compel, which was placed under seal. ECF Doc. 62. The Court will direct the clerk to terminate the first motion as it is moot.

30(b)(6) representative was adequately prepared to answer questions posed to her during her deposition; and (2) whether Boppy has produced all responsive documents. Upon consideration of Plaintiff's motion to compel, Boppy's response, ECF Docs. 63 & 66, and the relevant law, the Court answers both questions in the negative and finds the motion to compel should be GRANTED.

## I. Motion to Compel a Second Rule 30(b)(6) Deposition

A. Rule 30(b)(6)

Federal Rule of Civil Procedure Rule 30(b)(6) governs the depositions of corporate entities. Pursuant to Rule 30(b)(6), the party seeking to depose a corporation "must describe with reasonable particularity the matters for examination." Once that is done, the "organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). The designated person "must testify about information known or reasonably available to the organization." *Id.* While the Rule does not "require the corporation or entity to produce the 'person most knowledgeable' for the corporate deposition" or to designate someone with the best memory, it does require the corporation "to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects." *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D.

676, 688-89 (S.D. Fla. 2012) (listing the "litigation commandments" governing Rule 30(b)(6)).

The designee should be able to testify to matters known or reasonably available to the corporation. *Id.* at 689-91. "[W]hat is known to the organization refers to the corporation's collective knowledge of all its employees." *Richardson v. Fiat Chrysler Automobiles (FCA) US, LLC*, 2020 WL 592329, at *2 (M.D. Ga. Feb. 6, 2020); *McCreight v. AuburnBank,* 2020 WL 13002636, at *2 (M.D. Ala. Aug. 26, 2020) ("not only must the organization designate one or more witnesses to testify on its behalf, it must prepare the witness or witnesses to 'testify about all information known or reasonably available to the organization' for any questions that could arise under the noticed topics"). A corporation, therefore, "must prepare its designees by having them review available materials, such as fact witness deposition testimony, exhibits to depositions, documents produced in discovery, materials in former employees' files and, if necessary, interviews of former employees or others with knowledge." *Richardson,* 2020 WL 592329, at *2.

In determining whether a corporate deponent has met its Rule 30(b)(6) obligations, [c]ourts have examined the degree and type of effort made by the organization to prepare a witness in light of the deposition topics, and whether the organization acted 'in good faith.'" *Mfrs. Alliance Ins. Co. v. Brencorp, Inc.*, 2016 WL 11745984, at *10 (N.D. Ga. Aug. 3, 2016) (quoting *Costa v. Cnty. of Burlington*,

254 F.R.D. 187, 190 (D.N.J. June 27, 2008)). "It is left to the court's discretion to decide what knowledge can be considered 'reasonably available,' and what percentage of questions a witness must be able to answer to render her adequate." *Thermolife Int'l, LLC v. Vital Pharms., Inc.*, 2015 WL 11197783, at *1 (S.D. Fla. Oct. 5, 2015).

"If it becomes apparent during the deposition that the designee is unable to adequately respond to relevant questions on listed subjects, then the responding corporation has a duty to timely designate additional, supplemental witnesses as substitute deponents. *QBE Ins. Corp.*, 277 F.R.D. at 690. If the designee is not able to answer questions regarding the subject matter he was designated to testify about, the corporation has failed to satisfy its obligation to prepare the designee and may be subject to sanctions. *See Fuentes v. Classica Cruise Operator Ltd, Inc.*, 32 F.4th 1311, 1322 (11th Cir. 2022) (citing *Black Horse Lane Ass'n, L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir. 2000)); *Stoneeagle Serv., Inc. v. Pay-Plus Solutions, Inc.*, 2015 WL 12843846, at *1 (M.D. Fla. Apr. 29, 2015); *Cont'l Cas. Co. v. Compass Bank*, 2006 WL 533510, at *20 (S.D. Ala. Mar. 3, 2006) (sanctioning defendant for the failure of its corporate designee to "appear" for several areas of inquiry noticed by plaintiff). "[A] 30(b)(6) corporate designee's lack of preparation for a deposition may be deemed to be a failure to appear, for purposes of Rule 37(d)." *Mfrs. Alliance Ins. Co.*, 2016 WL 11745984, at *10.

Case No. 3:22cv668-TKW-HTC

B. Boppy's 30(b)(6) Deposition

On July 26, 2023, Plaintiff took the deposition of Boppy's Rule 30(b)(6) corporate representative in Denver, Colorado. Prior to taking the deposition, the parties agreed on 22 topics that the representative would testify about. Included among the topics were 7 different topics relating to warnings on the Newborn Lounger (Topics 1, 2, 7, 8, 10, 18, and 21), including how and why the warnings changed; 3 topics on hazard assessments or testing (Topics 3, 4, and 11); and 5 topics on design or manufacturing specifications and tolerances (Topics 5, 6, 17, 20, and 22). ECF Doc. 60-1 at 1-6.

Boppy designated Nancy Rae Bartley ("Bartley"), Boppy's CEO, as the corporate representative. The Court has reviewed the transcript of Bartley's deposition and finds that she was *not* prepared to answer questions regarding warnings, hazard assessments/ testing, or manufacturing and design of the Newborn Lounger. *See e.g., Hannah v. Armor Correctional Health Servs., Inc.*, 2020 WL 10692760, at *6 (M.D. Fla. June 30, 2020) (finding witness was unprepared to answer bulk of relevant questions).

Although Bartley has been with Boppy since 1999, she was not personally involved with many aspects of the design, warnings, or testing of the Newborn Lounger. Depo., Tr. 75:8-10. Her lack of direct personal knowledge, however, is irrelevant. It was incumbent upon Bartley as the corporate representative to conduct

an investigation into the topics on which she was designated to testify. *See Fed. Deposit Ins. Corp. v. Hutchins*, 2013 WL 12109446, at *3 (N.D. Ga. Oct. 25, 2013) (The representative "must become educated and gain the requested knowledge to the extent reasonably available" regardless of the representative's relevant knowledge at the time of designation); *SRT OPS, LLC v. R. Baker, Inc.*, 2012 WL 13026950, at *2 (N.D. Ala. July 26, 2012) (the organization's "duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved").

Based on Bartley's testimony, however, she did very little, if anything, to obtain "the collective knowledge of the corporation" before her deposition. *QBE Ins. Corp.*, 277 F.R.D. at 688. Instead, Bartley relied primarily, if not solely, on her own knowledge and experience with the company and her own memory of events. This is not sufficient. *Cont'l Cas. Co. v. First Fin. Emp. Leasing, Inc.*, 716 F. Supp. 2d 1176, 1189 (M.D. Fla. 2010) ("A corporate party does not meet its obligation by merely "producing a designee and [then] seeing what [s]he has to say or what [s]he can cover.").

Bartley confirmed at the outset of the deposition that she has knowledge of the topics identified in the notice. Depo., Tr. 24:23-25. However, Bartley had no knowledge of what testing was done on the Newborn Lounger and could only testify to what testing would have been done in the normal course of business. Depo., Tr.

Case No. 3:22cv668-TKW-HTC

27:12-28:17; 71:14-22; 73:9-15. Aside from such generalizations, Bartley was also unable to provide any information about what was actually done during the initial hazard assessment or any subsequent assessment or even when any assessment occurred during the life of the Newborn Lounger. Depo., Tr. 122:12-123:11; 132:1-9.

This information, however, was clearly reasonably available to the corporation and should have been gathered by Bartley, as the designated 30(b)(6) representative for Boppy. "[P]rior to a 30(b)(6) deposition, an organization is required to conduct an investigation and to review information that would assist it in knowledgeably answering the questions posed therein. This investigation may include reviewing documents produced in discovery, fact-witness testimony, exhibits to depositions, and company files. It may also include interviewing current and former employees with knowledge about the topics noticed." *See McCreight*, 2020 WL 13002636, at *2.

Bartley testified there were other people at Boppy who were involved with testing; Bartley, however, did not interview any of them. Depo., Tr. 30:13-19. Bartley also did not ask for any documents regarding testing or review any such documents. Depo., Tr. 30:20-31:11. Nonetheless, Bartley admitted identifying what testing was done is "something she could figure out." Depo., Tr. 124:17-20. Bartley testified a former employee, Theresa, would have that information, or possibly a

current employee, Jessica. Depo., Tr. 125:11-126:8. Bartley did not interview either of these people before the deposition. Depo., Tr. 32:12-16. Bartley agreed, however, that it would have been beneficial for her to have done so. *Id.* Bartley did not talk to these or other current or former employees,[2] even though she knew that she would be asked to talk about hazard assessments. Depo., Tr. 129:17-25; 130:25-131:1-3. She did not talk to other employees even though she testified that a cross-section of Boppy employees would have been involved in a hazard assessment. Depo., Tr. 133:16-25.

When Bartley was asked whether she came to the deposition without specific information to address this topic, Bartley boldly stated "yep." Depo., Tr. 129:17-25. Bartley may think that was a cute response; the Court is not amused. "If the original designated spokesman for the corporation lacks knowledge in the identified areas of inquiry, that does not become the inquiring party's problem, but demonstrates the responding party's failure of duty." *Shamrock Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2008 WL 11381463, at *2 (N.D. Ala. Apr. 15, 2008) (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 504-505 (D. Md. 2000)).

---

[2] *See United States v. Mass. Ind. Fin. Agency*, 162 F.R.D. 410, 412 (D. Mass. 1995) (rejecting corporation's arguments that it was not required under Rule 30(b)(6) to educate its witness about actions taken by former employees).

Case No. 3:22cv668-TKW-HTC

With regard to questions relating to manufacturing and design, Bartley was not sure when American Stitchco, one of Boppy's vendors, was involved with the Newborn Lounger, versus when Jonco, another vendor, was involved. Depo., Tr. 57-60. Bartley did not know whether Boppy consulted with anyone in the medical field regarding the Newborn Lounger when it was designed, but said the people identified on the patent would know. Depo., Tr. 67:9-19. Also, as discussed in section II, below, Bartley provided inaccurate testimony about what was in the tech packs and where the angle and degree design/manufacturing specifications would be located.

Bartley also did not have any information regarding why warnings on the Newborn Lounger were changed, Depo., Tr. 163:10-25, even though she knew she would be asked to talk about warnings, Depo., Tr. 164:1-15. Bartley could not explain when or why the warnings were changed to include a reference to positional asphyxiation even though she knew positional asphyxiation was an issue in this case. Depo., Tr. 165-69. The best Bartley could do was testify about possibilities for the change in the warnings. Depo., Tr. 172:4-11. Bartley did not check to see if Boppy had any memos regarding the warning changes. Depo., Tr. 175:5-11. Bartley, however, knew she would be asked about labels on the Newborn Lounger prior to coming to the deposition. Depo., Tr. 186:24-187:1-14. She agreed she was not

prepared to answer questions about when or why the warnings changed. Depo., Tr. 189:1-16.

In Boppy's response, Boppy agrees Plaintiff can retake a 30(b)(6) deposition on warnings. Boppy, however, objects to having Plaintiff retake a 30(b)(6) on hazard assessments. Given Bartley's clear lack of knowledge on hazard assessments and testing, Boppy's objection rings hollow. There can be no dispute Boppy's testing and assessments of the Newborn Lounger, particularly with regard to positional asphyxiation, is relevant to this litigation. Testimony about what Boppy would normally do or likely did is simply not sufficient and amounts to a non-answer. Boppy will put up a 30(b)(6) deponent to answer questions about its testing and hazard assessments for the Newborn Lounger.

Also, months after the deposition, on September 22, 2023, Boppy produced additional documents to Plaintiff, including additional manufacturing documents and documents relating to 4 prior incidents involving the Newborn Lounger.[3] There is no dispute those documents should have been produced prior to the deposition. Boppy has also agreed to make a 30(b)(6) deponent available to answer questions about those recently produced documents – but limited to those documents related to the 4 prior incidents. While that is certainly a start, it is far from being a complete

---

[3] Boppy contends it produced 256 documents; Plaintiff contends Boppy produced 1,700 additional documents. Whether that number is 256 or 1,700 is irrelevant. The documents should have been produced before the deposition.

Case No. 3:22cv668-TKW-HTC

olive branch. Boppy will produce a 30(b)(6) deponent to answer questions about all documents that were produced after the deposition which relate to any of the original 22 topics.

Finally, Boppy argues a second deposition should be limited to "two hours via tele-video conference, such as Zoom." ECF Doc. 63 at 15-16. The Court, however, will not put such constraints on Plaintiff when it was Boppy which failed to adequately prepare its witness and it was Boppy which failed to produce documents in a timely fashion. Thus, the deposition may be taken in-person or via Zoom as Plaintiff's counsel chooses and Plaintiff's counsel shall have up to 7 hours, not including breaks, to complete the deposition. The cost of the deposition, including any travel costs incurred by Plaintiff's counsel, will be borne by Boppy. *See Shamrock Comms., LLC*, 2008 WL 11381463, at *3 (ordering a second 30(b)(6) deposition at the corporation's cost).

## II. Motion to Compel Documents

Plaintiff also asks the Court to compel Boppy to produce documents relating to hazard assessments, documents identifying angles and degrees for the Newborn Lounger, and a privilege log. In Boppy's response, it states that all documents relating to hazard assessments for the Newborn Lounger have been produced, ECF Doc. 63 at 7, that all "tech packs" have been produced, *id.* at 9, and it produced a privilege log after the motion was filed, on October 12, 2023.

Case No. 3:22cv668-TKW-HTC

With regard to the hazard assessments, the Court certainly cannot compel a party to produce documents that do not exist. That said, counsel and Boppy are admonished to ensure that their representations are correct.[4] In several instances in the deposition, Bartley testified she did not ask other employees for documents; but instead relied upon IT to identify relevant documents – and if they found none, then she took the position none existed. *See* Depo., Tr. 31:8-14. Relying solely on what may or may not be found on an electronic server alone is not sufficient. When responding to a document request, a party should ensure it has conducted a diligent search for documents, including asking those employees who might be a custodian of those documents or generated such documents, if any documents exist. The Court may consider sanctions if it is determined after a second deposition that counsel or Boppy's representation regarding the lack of existence of such documents is inaccurate.

Boppy also contends that all relevant tech packs have been produced and appears to fault Plaintiff for not understanding that the information he seeks simply may not be in the tech packs. Plaintiff's misunderstanding, if any, however, is based on the testimony Bartley provided. Specifically, when Bartley was asked about

---

[4] The Court notes, for example, that while Boppy states in its written response that "all documents related to hazard assessments" for the Newborn Lounger have been produced, Bartley testified she was not aware of any documents relating to the initial hazard assessment (Depo. Tr. 27) and it is unclear whether any documents exist for the subsequent testing referenced by Bartley in her deposition as she did not ask anyone about it.

design specifications, namely degrees and angles for the Newborn Lounger, she testified that those are probably in the "tech pack." Depo., Tr. 48:18-25; 50:1-22. The fact Bartley may have been mistaken about what was in the tech packs because she had not looked at the tech packs for the Newborn Lounger "in quite a while," Depo., Tr. 49:20-22, or "recently," Depo., Tr. 50:14-17, only further highlights her lack of preparedness for the deposition. By Bartley's own admission, the tech packs contain the manufacturing specifications for the Newborn Lounger, which were topics in Plaintiff's notice of deposition; thus, Bartley should have clearly reviewed them for the deposition.

Regardless, the Court also does not find Boppy's response that all tech packs have been produced to be sufficient. Plaintiff's requests for production include a request for all written product specifications for the Newborn Lounger, RFPD No. 27, and a request for all documentation related to the development of the design for the Newborn Lounger, RFPD No. 35. Boppy shall produce documents responsive to those requests, whether that information is in a tech pack or some other document.

Finally, the Court agrees the issue of the privilege log is moot. However, the Court notes that parties who withhold documents on the ground of privilege are *required* to produce a privilege log. Fed. R. Civ. P. 26(b)(5). A privilege log should not have to be requested before it is produced.

Accordingly, it is ORDERED:

1. Plaintiff's Motion to Compel, ECF Doc. 60, is MOOT.

2. Plaintiff's Motion to Compel, ECF Doc. 62, is GRANTED.

3. Boppy shall make a 30(b)(6) witness[5] available for a second deposition on the following areas: (1) hazard assessments and testing on the Newborn Lounger; (2) manufacturing and design specifications for the Newborn Lounger; (3) documents produced after the deposition that relate to topics noticed in the first deposition, including but not limited to, documents relating to the 4 incidents involving the Newborn Lounger; and (4) warnings and labels on the Newborn Lounger. The deposition will be limited to 7 hours, excluding breaks. Boppy shall bear the reasonable costs for the deposition, to include (1) court reporter fee; (2) videographer fee, if any; (3) transcript and video costs (if applicable); and transportation costs for Plaintiff's counsel (if applicable).

4. To the extent any additional documents exist relating to hazard assessments or testing on the Newborn Lounger or containing product specifications, including angles and degrees for the Newborn Loungers, Boppy shall produce those documents within seven (7) days of this Order.

---

[5] It is up to Boppy whether it wants to designate Bartley or a different representative(s) for this second deposition.

Case No. 3:22cv668-TKW-HTC

DONE AND ORDERED this 27th day of October, 2023.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**